ROSINSKI et, Plaintiffs, v. JONES et, Defendants.

Municipal Court, Toledo.

No. 95869.   Decided February 28, 1961.

*Mr. Thaddeus N. Walinski,* for plaintiffs.
*Messrs. Cubbon & Rice, Mr. Paul M. Krause,* of counsel, for defendants.

DRISCOLL, J. This cause came on for trial before the court without a jury on the issues joined by the petition, alleging rent due from the original lessee and her assignee, and on the amended answer thereto, which in effect is a confession and avoidance, and was submitted on the pleadings and an agreed statement of fact.

On December 15, 1954, Stanley and Irene Rosinski entered into a written business property lease with, and thereby demised a store building for business purposes to, Marmel Eva Jones for a period of five years, beginning January 1, 1955, and ending December 31, 1959, in consideration of her promise to pay said lessors $2,100, in monthly installments of $35.00 and the bills for gas and electric service for the whole building on the first day of each month in advance during the term of said lease.

"On August 14, 1958, the lease was assigned by defendant Jones to one Dean M. Matheny. On February 10, 1959, Matheny assigned the lease to defendant Barker. Both assignments were accepted by the respective assignees, and both were consented to by plaintiffs."

"On May 22, 1959, defendant Barker, the tenant then in possession, was ordered by the Board of Health of the City of Toledo to install a toilet on the subject premises, along with a two-compartment sink, as a condition of a continuation of defendant Barker's business. This notice was called to the

attention of plaintiffs by defendant Barker, and plaintiffs refused to make the installation and/or pay for the same. Defendant Barker complied with the Board of Health order and vacated the premises on or about June 1, 1959." No rent was paid from June 1, 1959 to December 31, 1959, nor were the utility bills, averaging about $12.00 per month, paid during said period.

The question submitted for determination is whether the original lessee or her assignee, or both, are liable to the lessors for the rents payable for the period of time after the demised property was vacated, pursuant to the order of the Board of Health for failure to bring the property up to health standards.

Bearing on the liability of the assignee, the decision in *Sutliff* v. *Atward,* 15 Ohio St., 186, is significant. It is held in the second and third paragraphs of the syllabus in that case as follows:

(2) "An express contract of the lessee fixes his liability for the whole term; *but that of the assignee is limited to the rent accruing during the continuance of his interest.* The lessor may at his election, pursue either or both for payment."

(3) "*It is the legal duty of the assignee to pay the rent while he enjoys the estate*; and the personal liability of the lessee is in the nature of a security as between him and the assignee, and, in the absence of agreement between them, the latter is primarily liable." (Emphasis supplied.)

Moreover, in the first paragraph of the syllabus in *Gholson* v. *Savin et al.,* 137 Ohio St., 551; 19 Ohio Opinions, 309, is found further affirmation of the rule stated in the second paragraph of the syllabus in *Sutliff* v. *Atward, supra.*

On authority in the foregoing cases, the court finds that the assignee defendant, Grace Barker, is not liable to the original lessors or lessee for any payments due after the said defendant, Grace Barker, vacated the demised premises on or about June 1, 1959, in compliance with the order of the Board of Health. Since she has paid all obligations incurred during her occupancy, she should be dismissed as a defendant.

As to the parties to the written lease, it is observed that the said lease contains the following provisions:

5. "That said Lessee will make all the repairs in the in-

terior of the premises hereby leased and will indemnify and save harmless said Lessor from and against all liens, claims and damages by reason of any repairs or improvements which may be made by said Lessee on said premises, except repairs to the roof and sidewalks, which shall be made by and at the expense of said Lessor, upon reasonable notice given by Lessee of the necessity therefor.''

13. ''That said Lessee will fully comply with and obey all laws, ordinances, rules, regulations and requirements of all regularly constituted authorities, in any way affecting said premises or the use thereof, or this lease.''

22. ''That said Lessee will keep said premises in such repair and condition as may be required by the Board of Health, or other City, State or Federal authorities, free of all cost to said Lessor.''

25. ''. . . And said Lessor, for himself, herself, his, her, their, its successors, heirs and assigns, hereby covenants and agrees with said Lessee, his, her, its successors, executors, and administrators, that said Lessee paying rents and performing and observing each and every the covenants and conditions hereof on the part of said Lessee to be performed and observed, said Lessee shall peaceably and quietly hold, occupy and enjoy said premises during said term, without any let, hindrance or molestation by any person whatsoever.''

The foregoing covenants bound the original lessors and lessee. The lessee thereby was obligated to accept the premises in the condition then existing, to *keep* said premises in such repair and condition as may be required by the Board of Health, to fully comply with and obey all requirements of the Board of Health, and to save the lessors harmless therefor, except as to repairs of the roof and sidewalks, which were to be made at the expense of the lessors. The lessors were obligated to the lessee for her peaceful and quiet occupancy and enjoyment of ''said premises during said term, without let, hindrance or molestation of any person whatsoever.'' The said parties did not submit or delegate to the Board of Health the judicial determination of the rights of the parties under the terms of the lease.

The failure to meet the standards and requirements of the Board of Health was not a violation of sanitation imposed by

law and the duty to keep the premises in repair, which were imposed by the terms of the lease upon the tenant. The failure of compliance with the requirements of the Board of Health was in the structural condition of the demised premises. Compliance required structural alterations and permanent improvements of the premises. Compliance with the order would enhance the leasehold to the permanent benefit of the lessors rather than the temporary tenancy of the lessee for the balance of the lease from June 1, 1959 to December 31, 1959.

It is obvious that while the lessee was required to keep the premises in good repair and to comply with the orders of the Board of Health, she was not required to reconstruct the premises to bring the building to the standards demanded by the Board of Health. However, by the terms of the lease, she was required to comply with the order of the Board of Health to vacate the premises, unless the required structural alterations were effected.

We are not concerned here with the authorities cited and bearing on the lessee's right to recover for constructive eviction, for neither the lessee nor the assignee makes any claim therefor.

The covenant of quiet enjoyment, although personal as between the lessors and the lessee, is not only a negative but a positive assurance against intervention by third parties, including the Board of Health. Here the intervention is the exercise of police power directed to the structural condition of the premises and the lessors refused to comply with the order. As a consequence, the lessee was deprived of her use, enjoyment and occupancy of the premises, for which they were mutually leased. Such intervention by the Board of Health was permissive at the instance of the lessors. (See *Cloud et al,* v. *Peller,* 27 O. C. D., 477.)

Where a lessee covenants to keep demised premises in repair, and the lessor covenants for the lessee's quiet enjoyment thereof, and the lessee is ordered evicted by the Board of Health for failure during the term of the lease to make material, structural and permanent improvements of the demised premises, which both the lessor and the lessee refused to make, the lessor is estopped in an action to collect the rents from the lessee for the period of the vacation of the premises.

For the reasons stated herein the court finds for the defendants, and judgment on the finding is entered for the defendants and against the plaintiff for their respective costs expended herein.